S95A1029. DORROH et al. v. McCARTHY et al.
(462 SE2d 708)

FLETCHER, Presiding Justice.

Property owners William and Margaret Dorroh sued to stop their neighbor Brian McCarthy from constructing a dock in the navigable tidal waters in coastal Chatham County. The trial court ruled that McCarthy was a riparian owner because his property adjoins the high water mark of the river and that the Department of Natural Resources did not abuse its discretion in allowing equitable access to navigable water in the tidal basin among adjoining waterfront property owners. We agree that the state exercised its discretion reasonably when it adopted an equitable approach in apportioning use of its tidelands among riparian owners on the curving shoreline and affirm.

McCarthy and the Dorrohs own adjoining lots that abut the high water mark or marsh line on a curving inlet in a tidal basin of the Wilmington River.[1] In 1987, McCarthy applied for a permit to build a dock in the basin's navigable waters, but DNR rejected the proposal.

---

[1] A plat of their property is reproduced in the appendix.

In 1993, the DNR commissioner requested a legal opinion concerning the proper method for allocating use of state-owned water bottoms on the navigable tidewaters between adjoining waterfront property owners. The attorney general concluded that the straight-line extension method, which extends the side boundary lines of property, was generally acceptable, but rigid adherence to it could cause inequitable results by denying access to deep water to a riparian or littoral owner.[2] Based on this official opinion, DNR changed its policy and granted McCarthy a revocable license to construct a dock in the tidal waters. The Dorrohs sued McCarthy and the DNR commissioner, seeking an injunction to stop construction and a declaratory judgment that the license was illegal. The trial court denied both, and the Dorrohs appealed.

1. The record supports the trial court's finding that McCarthy is a riparian owner. A "riparian owner" historically was defined as one who owns land on the bank of a river or stream whereas a "littoral owner" referred to one who owns land abutting an ocean, sea, or lake.[3] Current usage, however, makes "riparian" an acceptable term for describing land that abuts either rivers or lakes.[4] McCarthy is a riparian owner because his property abuts the high water mark or marsh line.

2. The state owns fee simple title to the foreshore on navigable tidal waters.[5] The foreshore is the "strip of land that lies between the high and low water marks and that is alternately wet and dry according to the flow of the tide."[6] As a result, the state owns the river's water bottoms up to the high water mark and may regulate the use of these tidelands for the public good.[7]

The Dorrohs argue that OCGA § 44-8-7 requires the state to use the straight-line extension method for allocating access to the tidal waters and use of the tidelands.[8] We construed that statute narrowly in *State of Ga. v. Ashmore* as granting adjacent property owners "nothing but the right to plant, cultivate and harvest oysters and clams" to the low-water mark.[9] Contrary to the Dorrohs' contention, the statute does not establish the method that the state must follow in allocating use of state-owned water bottoms among riparian owners. Instead, as the state agency designated to manage the tidelands,

---

[2] See 1993 Op. Atty. Gen. 70.
[3] See Black's Law Dictionary 842, 1192 (5th ed. 1979).
[4] 78 AmJur2d 703, Waters, § 260 (1975).
[5] *State of Ga. v. Ashmore*, 236 Ga. 401, 413 (224 SE2d 334), cert. denied, 429 U. S. 830 (97 SC 92, 50 LE2d 95) (1976).
[6] Black's Law Dictionary 584.
[7] See OCGA § 50-16-61 (1994).
[8] See OCGA § 44-8-7 (b) (1982).
[9] See 236 Ga. at 413.

DNR may determine the appropriate method by which to apportion use of the state's property.[10]

3. Although the courts in this state have not previously considered how to divide the riparian owner's right of access on a curving shoreline, other states provide persuasive authority for the principle of equitable apportionment.[11] Many jurisdictions have adopted a general rule that allocates access to tidal waters according to the riparian owner's frontage on the high water line.[12] The "fundamental rule" in dividing the tidelands is "to give to each parcel a width at its outer or seaward end proportional to that which it has at the high water mark."[13] Other states have eschewed a general rule in favor of a case-by-case adjudication based on equitable principles.[14]

We hold that the Georgia DNR exercised its discretion reasonably in adopting a policy granting equitable access to the tidelands and tidal waters among the waterfront property owners. When the shoreline is relatively straight, extending the property lines straight out to the navigable waters is a fair method for allocating access among riparian owners. When the shoreline curves, however, the straight-line method is inadequate. It can result in overlapping claims for use of state-owned water bottoms and in denying access to water altogether to some riparian owners. These inequities justified the department's decision to revise its strict adherence to the straight-line extension method in favor of an equitable approach.

Since the state applied equitable principles in evaluating McCarthy's request, we conclude that the trial court correctly declared McCarthy's revocable license valid under state law. Based on the record, we also find that the trial court did not abuse its discretion in denying the Dorrohs' request for a permanent injunction against construction of McCarthy's dock.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 16, 1995.

*Robert E. Falligant, Jr.,* for appellants.
*Michael J. Bowers, Attorney General, Isaac Byrd, Robert S. Bomar, Senior Assistant Attorneys General,* for appellees.

---

[10] See *Rolleston v. State of Ga.,* 245 Ga. 576, 581 (266 SE2d 189) (1980).

[11] See 78 AmJur2d 841, Waters, § 398; 65 CJS 226, Navigable Waters, § 67 (1966).

[12] See C. T. Foster, Annotation, Apportionment and Division of Area of River as Between Riparian Tracts Fronting on Same Bank, in Absence of Agreement or Specification, 65 ALR2d 138, 188-192 (1959); see also *Langley v. Meredith,* 376 SE2d 519, 523 (Va. 1989) (defining a "just rule of division" as one giving each owner the same portion of the navigable water as he is entitled of the shoreline).

[13] *Wonson v. Wonson,* 96 Mass. (14 Allen) 71 (1867), quoted in 65 ALR2d at 190.

[14] See, e.g., *Hayes v. Bowman,* 91 S2d 795, 801-802 (Fla. 1957).